**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**PREMIER BANK, LLC,**

          **Appellant,**

**v.**                **//   CIVIL ACTION NO. 1:19CV143
                            BANKRUPTCY NO. 1:17BK21
                            (Judge Keeley)**

**EMERALD GRANDE, LLC,**

          **Appellee.**

**MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT**

The appellant, Premier Bank, LLC ("Premier"),[1] appeals the March 27, 2019 Memorandum Opinion (the "Opinion") and July 17, 2019 Order entered by the United States Bankruptcy Court for the Northern District of West Virginia ("Bankruptcy Court"), which sustained in part the objection of appellee, Emerald Grade LLC ("Emerald"), and disallowed $139,406.71[2] in attorney's fees and expenses in Premier's amended proof of claim.

Premier alleges that, in making its decision, the Bankruptcy Court erroneously construed and narrowed the attorney's fee provisions of the governing loan documents. It further contends that the Bankruptcy Court erred when it determined that not all of

---

[1] Premier Bank, Inc. is the successor by merger of First Bank of Charleston, Inc., the lender to and original claimant against Emerald (Dkt. No. 57 at 2).

[2] Initially, the Bankruptcy Court disallowed $111,467.11 in attorney's fees and expenses on March 27, 2019 (Dkt. No. 57-9). On July 17, 2019, however, the Bankruptcy Court disallowed $139,406.71 of Premier's total claim of $296,920.00 for attorney's fees and expenses (Dkt No. 57-10).

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

Premier's actions were necessary to protect its interests in the enforcement and collection of the loans. Finally, it contends that the Bankruptcy Court erred in admitting into evidence Emerald's summary of Premier's attorney's fees by task. For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's decision.

### I. BACKGROUND[3]

**A.   The Parties**

In 2009 and 2014, Premier made two loans to Emerald to fund the construction of two restaurants and a retail store in the Kanawha City area of Charleston, West Virginia (Dkt. No. 58 at 5). Premier issued two promissory notes in connection with the loan agreements, and its interest was secured by two first-lien credit line deeds of trust in Emerald's real property and improvements. (Dkt. Nos. 57 at 3; 57-18 at 20-22, 79-81).

On June 23, 2016, flood waters destroyed a culvert bridge that connected the Crossings Mall in Elkview, West Virginia, owned by Tara Retail Group, LLC ("Tara"),[4] and the La Quinta Inn hotel,

---

[3] The facts recited are taken from the parties' briefs and the designated record on appeal. The designated record is voluminous – with approximately 1594 documents submitted for the Court's review. See, e.g., Dkt. The substance of the majority of these documents is not pertinent to the issues raised on appeal.

[4] Tara is Emerald's affiliate, and the two entities are controlled by the same principal, William Abruzzino (Dkt. No. 57 at 30).

2

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

<u>MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT</u>

owned by Emerald, to the public road (Dkt. No. 58 at 6). Between June 23, 2016, and January 11, 2017, Emerald and Tara unsuccessfully attempted to arrange financing to rebuild the bridge and reestablish public access to the La Quinta Inn and the Crossings Mall. <u>Id.</u>

**B.    The Bankruptcy Court's Decision on Emerald's Objection to Premier's Amended Claim**

On January 11, 2017, Emerald sought Chapter 11 protection under 11 U.S.C. § 1101 et seq. in response to another creditor's notice of a foreclosure sale on two hotels owned by Emerald[5] (Dkt. Nos. 57 at 3; 15-8 at *12-14).  Premier timely filed a proof of claim against Emerald, asserting a secured claim in the amount of $1,983,878.77, the principal amount outstanding under its two loans as of the date of the commencement of the Chapter 11 case (Dkt. No. 57 at 3).

After seeking bankruptcy protection, Emerald discovered and reported to Premier that it had failed to collect real estate taxes, insurance, and common area maintenance funds from its tenants at the Kanawha City property (Dkt. No. 58 at 7). In order to remedy this oversight, Premier made a post-petition loan to Emerald and earmarked the funds to pay the real estate taxes. <u>Id.</u>

---

[5] These hotels, both La Quinta Inns, are not located on the property secured by Premier's loans.

3

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

From January 2017 to December 2017, Emerald voluntarily agreed to and entered into eight stipulations and interim cash collateral orders with Premier governing Emerald's use of Premier's cash collateral. Id.

Tara also filed for bankruptcy protection on January 24, 2017. Id. at 8. During the pendency of its case, Tara obtained approval for post-petition financing to rebuild the culvert bridge to the Crossings Mall and Emerald's La Quinta Inn. Id. Following this, on October 30, 2017, Tara filed an administrative priority claim for $556,332.25 in Emerald's bankruptcy case (Dkt. No. 9-28). This claim was based on Tara's expenditure of $1,112,664.50 to engineer and construct a bridge and restore access to the Crossings Mall. Id. Tara sought to collect half of that cost from Emerald. Id.

Premier objected, arguing that Tara's claim would deplete the assets available to it in Emerald's bankruptcy estate (Dkt. No. 9-45). Notably, however, the La Quinta Inn at the Crossings Mall was not Premier's collateral, but that of Carter Bank & Trust ("Carter Bank"),[6] which later joined in Premier's objection (Dkt. No. 58 at 9).

---

[6] Carter Bank is another creditor of Emerald's, but its claim to Emerald's bankruptcy estate relates to Emerald's operation of the La Quinta Inn at the Crossings Mall, not to the property secured by Premier's loans.

4

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

Premier's objection to Tara's administrative claim captures the essence of Premier's perspective regarding Tara's influence on Emerald and the administration of its debt estate:

> As this Court well knows, the Abruzzino empire appears to have precious few available unencumbered assets. Under all the facts and circumstances, given the paucity of supporting allegations in the motion, and in light of the Debtor's mystifying response thereto, one can hardly avoid the conclusion that this motion constitutes a blatant attempt by the Debtor's principal to glom onto and appropriate most, if not all, of the value of one of the few unencumbered assets in ths system at the expense of this Debtor and its estate and creditors for the benefit of the broader Abruzzino empire. While that may have been done and may have been doable in a pre-bankruptcy world, the filing of this case, the creation of this Debtor's bankruptcy estate, and the vesting of that estate in the hands of a debtor in possession acting as a trustee for the benefit of the Debtor's estate and creditors now carry broader responsibilities for the Debtor and its professionals and require far more scrutiny.

Dkt. No. 9-45 at ¶ 11 (footnote omitted).

On March 12, 2018, Premier amended its proof of claim to include attorney's fees and expenses in the amount of $154,961.21 (Dkt. No. 57 at 4; Dkt. No. 57-19). Emerald objected, contending that Premier's claim included unnecessary attorney's fees not reimbursable under Premier's loan documents (Dkt. No. 58 at 10).

Premier not only amended its claim to include its attorney's fees, it also moved to convert Emerald's bankruptcy case from Chapter 11 to Chapter 7. Id. at 11. Premier's motion to convert

5

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

detailed its frustration with Emerald's principal and its affiliate:

> What's more, [Emerald's] principal and affiliate have relentlessly pushed, so far without any success despite the expenditure of substantial time, effort, and administrative expense, to establish a massive expense claim that would only deepen its existing administrative insolvency by a factor of two or more and leave it insolvent even if a genie were to grant its wildest wish and cause the sale of its unencumbered property at its current asking price. . . . [Emerald] has actively supported, even facilitated, the imposition of a massive administrative expense claim that would immediately render this estate massively insolvent.

Dkt. No. 57-20 at ¶¶ 24, 31. At the hearing on the motion to convert, counsel for Premier—not Carter Bank's counsel—took the lead, presenting evidence related to the collateral and claim belonging to Carter Bank (Dkt. No. 58 at 11).

The Bankruptcy Court denied Premier's motion to convert on June 4, 2018, and later held an evidentiary hearing on Emerald's objection to Premier's amended fee claim on July 26, 2018 (Dkt. No. 57 at 11). By that time, Premier's attorney's fees and expenses had ballooned to $296,920.00 (Dkt. No. 58 at 9). During the evidentiary hearing, the Bankruptcy Court heard testimony from William Abruzzino, Emerald's CEO; Marvin Ralston, an appraiser; and Anthony Marks, Premier's executive vice president (Dkt. No. 57-17).

In its March 27, 2019 Opinion, the Bankruptcy Court sustained in part Emerald's objection to Premier's proof of claim, and

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

disallowed $111,467.11 of Premier's attorney's fees and expenses associated with its challenge to Tara's administrative expense claim and its own motion to convert Emerald's case to Chapter 7 (Dkt. No. 57-9). In its Opinion, the Bankruptcy Court construed certain provisions within nine loan documents that entitled Premier to reimbursement of certain attorney's fees and expenses and concluded that, when taken as a whole, these provisions allowed Premier to recover attorney's fees and expenses incurred to enforce its agreements with Emerald or to collect on the Notes. Id.

On May 29, 2019, the Bankruptcy Court held a telephone hearing to complete the record regarding the specific amount of fees and expenses to be disallowed from Premier's proof of claim for monitoring the Tara bankruptcy case and performing certain clerical work. (Dkt. No. 57-15). Finally, on July 17, 2019, the Bankruptcy Court entered an order disallowing $139,406.71 of the total fees and expenses sought by Premier, as follows:

> (1) attorney's fees and expenses related to Premier Bank's objection to the administrative expense claim of Tara Retail Group, LLC in the amounts of $55,837.00 and $735.04, respectively;
> (2) attorney's fees and expenses relating to Premier Bank's motion to convert the Debtor's case to a case under Chapter 7 of the Bankruptcy Code in the amounts of $49,545.00 and $5,350.07, respectively;
> (3) attorney's fees relating to Premier Bank's monitoring of the Tara Retail Group, LLC bankruptcy case in the amount of $22,280.85; and

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

(4) attorney's fees relating to clerical work in the amount of $5,658.75.

Id. at 1, 2.

## II. JURISDICTION

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157." 28 U.S.C. § 158(a).

## III. STANDARD OF REVIEW

A district court sitting as a bankruptcy appellate court reviews "findings of fact only for clear error, but consider[s] the relevant legal questions de novo." In re Varat Enters., Inc., 81 F.3d 1310, 1314 (4th Cir. 1996). Therefore, when the parties do not dispute the relevant facts, the Court's review is de novo. See In re Jones, 591 F.3d 308, 310 (4th Cir. 2010).

## IV. DISCUSSION

**A.   The Bankruptcy Court Correctly Enforced the Plain Language of the Attorneys' Fee Provisions of the Governing Loan Documents.**

11 U.S.C. § 502(b) provides that a "court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." A claim is a "right to payment, whether or not such right is reduced to judgment,

8

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A "right to payment . . . usually refer[s] to a right to payment recognized under state law." Travelers Cas. & Surety Co. of America v. Pacific Gas & Electric Co., 549 U.S. 443, 451, 127 S.Ct. 1199 (2007). According to Travelers, "an otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." Id., 549 U.S. at 447, 127 S.Ct. 1199.

Section 502(b)(1) bars any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Put another way, "any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." Travelers, 549 U.S. at 450, 127 S.Ct. 1199.

Courts generally presume claims that are enforceable under state law will be allowed in bankruptcy unless specifically disallowed. SummitBridge National Investments III, LLC v. Faison, 915 F.3d 288, 291 (4th Cir. 2019). State law governs the substance of claims in bankruptcy because Congress has generally abdicated the determination of property rights in the assets of a bankrupt's

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

estate to state law. Id. at 296 (quoting Travelers, 549 U.S. at 450-51, 127 S.Ct. 1199).

In West Virginia, "[a]s a general rule[,] each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, Sally-Mike Properties v. Yokum,179 W. Va. 48, 365 S.E.2d 246 (1986); see also Moore v. Johnson Service Co., 158 W. Va. 808, 822, 219 S.E.2d 315, 324 ("A mutual covenant contained in a commercial lease agreement, providing for the recovery of reasonable attorneys' fees and expense of litigation . . . is valid and enforceable in the courts of this State."). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 6, Dan's Carworld, LLC v. Serian, 223 W. Va. 478, 479-80, 677 S.E.2d 914, 915-16 (2009).

Premier's interest in Emerald's debt estate arises from Loan Number 330005 (the "2009 Loan") and Loan Number 351018 (the "2014 Loan") (Dkt. No. 57-18 at 4). The documents associated with these loans contain various attorney's fee provisions. Id. The plain language of these provisions is critical to this Court's analysis.

The 2009 Loan, in the amount of $2,400,000.00, financed the construction of one of the buildings in Emerald's Charleston real

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                 1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

estate development. Id. at 5. As part of this agreement, Emerald
executed a Promissory Note, granted Premier a lien on its real
estate development and the rents derived therefrom, and granted
Premier security interests in and to all of its inventory, chattel
paper, accounts, equipment, general intangibles, and fixtures. Id.

In the Construction Loan Agreement for the 2009 Loan, Emerald
specifically agreed

> to pay upon demand all of [Premier's] costs and expenses,
> including [Premier's] attorneys' fees and [Premier's]
> legal expenses, **incurred in connection with the
> enforcement of this Agreement.** [Premier] may hire or pay
> someone else to help enforce this Agreement, and
> [Emerald] shall pay the costs and expenses of such
> enforcement. Costs and legal expenses include [Premier's]
> attorneys' fees and legal expenses whether or not there
> is a lawsuit, including attorneys' fees and legal
> expenses for bankruptcy proceedings (including efforts to
> modify or vacate any automatic stay or injunction),
> appeals, and any anticipated post-judgment collection
> services. [Emerald] also shall pay all court costs and
> such additional fees as may be directed by the court.

Id. at 16 (emphasis added). In its Promissory Note for the 2009
Loan, Emerald also agreed that

> [Premier] may hire or pay someone else to help **collect
> this Note if [Emerald] does not pay.** [Emerald] will pay
> [Premier] that amount. This includes, **subject to any
> limits under applicable law,** [Premier's] attorneys' fees
> and [Premier's] legal expenses, whether or not there is
> a lawsuit, including attorneys' fees, expenses for
> bankruptcy proceedings (including efforts to modify or
> vacate any automatic stay or injunction), and appeals. If
> not prohibited by applicable law, [Emerald] also will pay
> any court costs, in addition to all other sums provided
> by law.

11

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

Id. at 21 (emphasis added).

The attorney's fee provision in the Deed of Trust executed by

Emerald for the 2009 Loan states that:

> [Emerald] shall pay on demand **all reasonable costs and
> expenses that . . . [Premier] may pay or incur in
> connection with the . . . enforcement . . . of this Trust
> Deed,** including, without limitation: (i) **reasonable
> attorney's and paralegals' fees** and disbursements of
> counsel to . . . [Premier] . . . and (vii) costs and
> expenses (including **reasonable attorneys' and paralegals'
> fees and disbursements) paid or incurred to obtain
> payment of the Obligations, enforce the security
> interests and liens of [Premier],** sell or otherwise
> realize upon the Trust Property, and otherwise enforce
> the provisions of this Trust Deed and the other
> Transaction Documents, or to defend any claims made or
> threatened against Lender arising out of the transactions
> contemplated hereby (including, without limitation,
> preparations for and consultations concerning any such
> matters. The foregoing shall not be construed to limit
> any other provisions of the Transaction Documents
> regarding costs and expenses to be paid by Company.

Id. at 32 (emphasis added).

Finally, Emerald granted Premier an interest in its inventory

and chattel paper for the 2009 Loan, as follows:

> Grantor agrees to pay upon demand all of [Premier's]
> costs and expenses, including [Premier's] attorneys' fees
> and [Premier's] legal expenses, incurred **in connection
> with the enforcement of this Agreement.** [Premier] may
> hire or pay someone else to help enforce this Agreement,
> and Grantor shall pay the costs and expenses of such
> enforcement. Costs and expenses include [Premier's]
> attorneys' fees and legal expenses whether or not there
> is a lawsuit, including attorneys' fees and legal
> expenses for bankruptcy proceedings (including efforts to
> modify or vacate any automatic stay or injunction),
> appeals, and any anticipated post-judgment collection

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

> services. Grantor shall also pay all court costs and such
> additional fees as may be directed by the court.

Id. at 58, 59 (emphasis added).

Similar documents were executed regarding the parties' 2014

Loan. For example, in the Construction Loan Agreement for the 2014

Loan, Emerald agreed

> to pay upon demand all of [Premier's] costs and expenses,
> including [Premier's] attorneys' fees and [Premier's]
> legal expenses, **incurred in connection with the
> enforcement of this Agreement**. [Premier] may hire or pay
> someone else to help enforce this Agreement, and
> [Emerald] shall pay the costs and expenses of such
> enforcement. Costs and expenses include [Premier's]
> attorneys' fees and legal expenses, whether or not there
> is a lawsuit, including attorneys' fees and legal
> expenses for bankruptcy proceedings (including efforts to
> modify or vacate any automatic stay or injunction),
> appeals, and any anticipated post-judgment collection
> services. [Emerald] also shall pay all court costs and
> such additional fees as may be directed by the court.

Id. at 73 (emphasis added). And the Promissory Note for the 2014

Loan stated:

> [Premier] may hire or pay someone else to help **collect
> this Note if [Emerald] does not pay**. [Emerald] will pay
> [Premier] that amount. This includes, subject to any
> limits under applicable law, [Premier's] attorneys' fees
> and [Premier's] legal expenses, whether or not there is
> a lawsuit, including attorney's fees, expenses for
> bankruptcy proceedings (including efforts to modify or
> vacate any automatic stay or injunction), and appeals. If
> not prohibited by applicable law, [Emerald] also will pay
> any court costs, in addition to all other sums provided
> by law.

Id. at 80 (emphasis added).

13

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

Emerald also executed a Deed of Trust for the 2014 Loan, in which it agreed that:

> **If [Premier] institutes any suit or action to enforce any of the terms of this Deed of Trust, [Premier] shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees** at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses [Premier] incurs that in [Premier's] opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, [Premier's] attorneys' fees and [Premier's] legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. [Emerald] will also pay any court costs, in addition to all other sums provided by law.

Id. at 87 (emphasis added). The Assignment of Rents executed by Emerald contains the same broad attorney's fee provision as the deed of trust for the 2014 Loan. Id. at 93.

Premier argues that the Bankruptcy Court erred by narrowing its rights to reimbursement of fees and expenses to include only those related to the enforcement and collection of the loans. Premier also contends that the Bankruptcy Court substituted its own judgment as to what constitutes proper enforcement and collection

14

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

of the loans by disallowing certain categories of fees and costs it concluded were unrelated to the enforcement and collection of the loans.

Emerald argues that Premier's attorney's fee claim is barred by 11 U.S.C. § 502(b) because the fees Premier incurred were not related to the enforcement of its interest and, consequently, constitute an unenforceable claim.

Essentially, Premier contends that the Bankruptcy Court erred by failing to conclude that Premier was entitled to reimbursement of all fees which "in its opinion" were necessary to protect its interest. This argument is a red herring. As the documents themselves make clear, all the relevant attorney's fee provisions tie Premier's right to reimbursement of its attorney's fees to actions taken "in connection with the enforcement [of its loan] agreements" or to "collect on [its] Note[s] if [Emerald] does not pay." Several provisions further require these fees to be "reasonable" and "subject to limitation under applicable law." Pursuant to this unambiguous limitation on Premier's right to reimbursement, the Bankruptcy Court correctly narrowed Premier's claim for attorney's fees and costs to those activities related to enforcement or collection of its loans.

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

**B.    The Bankruptcy Court Did Not Clearly Err when it Rejected the Testimony of Premier's Witness.**

The Bankruptcy Court appropriately considered testimony and evidence concerning Premier's counsel's activity and its relation to enforcement and collection. As the finder of fact, it was in the best position to weigh such evidence and its findings are entitled to deference. In re Varat Enters., Inc., 81 F.3d 1310, 1314 (4th Cir. 1996).

Deference to a bankruptcy court is particularly appropriate when, as here, the bankruptcy court has made credibility determinations based on live witness testimony. Cf. In re: Dornier Aviation (North America), Incorporated, 453 F.3d 225, 235 (4th Cir. 2006). Factual findings are clearly erroneous "only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" Citizens Bank of Md. v. Broyles (In re Broyles), 55 F.3d 980, 983 (4th Cir. 1995)(quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525 (1948)). So long as a bankruptcy court's account of evidence is plausible, the district court may not reverse the decision simply because it would have weighed the evidence differently. In re Broyles, 55 F.3d at 983. If there are "two permissible views of evidence, the factfinder's choice between them cannot be clearly erroneous."

16

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

McGahren v. First Citizens Bank & Trust Co., 111 F.3d 1159, 1166
(4th Cir. 1997).

Premier contends that the testimony of its executive vice
president, Anthony Marks, compels a finding in its favor. According
to Premier, Marks's testimony established that 1) Emerald had
defaulted on its loans; 2) that Premier was compelled to engage
counsel to file a proof of claim; 3) that Premier required expert
assistance with Emerald's proposed use of cash collateral; and 4)
that Emerald failed to address important issues in its proposed
Chapter 11 plan, specifically, the plan for future settlement
payments from Emerald's tenants to Premier (Dkt. No. 57 at 23-25;
Dkt. No. 57-17 at 68:12-23). Marks opined that all of the fees and
expenses incurred by Premier's counsel in this matter (and in
monitoring Tara's bankruptcy litigation) were necessary to the
enforcement of the bank's rights (Dkt. No. 57-17 at 100:2-6). Marks
also testified that these actions were intended to enforce the loan
documents and to preserve Premier's rights. Id. at 100:7-17.
Relying on Marks's testimony, Premier asserts that all actions
undertaken by its counsel in this matter and to monitor Tara's
related bankruptcy proceeding were for the purpose of and necessary
to protecting its rights under its agreements with Emerald (Dkt.
No. 57 at 25).

17

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT
_____

In addition to Marks's testimony, the Bankruptcy Court considered 1) the plain language of the loan agreements (that all Premier's actions must be taken to enforce its loan agreement or collect on its collateral to be eligible for reimbursement), 2) the fact that Emerald was paying its contractual monthly debt service to Premier, and 3) the nature and substance of Premier's participation as a creditor in Emerald's bankruptcy case. Id. at 5, 6. As the finder of fact, the Bankruptcy Court was in the best position to assess Marks's credibility and decide how much weight to accord his opinions and testimony.

After considering the Bankruptcy Court's weighing of the necessity of the fees and expenses in light of the relevant attorney's fee provisions, the Court is not left with the "definite and firm conviction that a mistake [was] committed" regarding that court's assessment of Marks's testimony. See In re Broyles, 55 F.3d at 983. The Bankruptcy Court fully considered the activities undertaken by Premier, assessed the evidence and testimony presented in light of the governing attorney's fee provisions in the loan documents, and concluded that Premier's actions strayed beyond the bounds of its agreements with Emerald. The Court will not reverse the Bankruptcy Court's well-reasoned decision about the weight given to Marks's testimony.

18

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

C.    **The Bankruptcy Court Correctly Disallowed Fee Reimbursement
      for Activities Unrelated to Enforcement or Collection.**

Premier objects to the Bankruptcy Court's disallowance of
attorney's fees related to: 1) monitoring Tara's bankruptcy case
and to the actions taken on Tara's administrative expense claim, 2)
Premier's motion to convert, and 3) for clerical work. Premier
argues that, "[e]ven accepting the Bankruptcy Court's findings as
correct, those facts do not defeat the Bank's right to monitor the
Tara bankruptcy case or participate in litigation regarding Tara's
administrative expense claim." (Dkt. No. 57 at 30). But whatever
right Premier might have to monitor or participate in other
litigation does not create an entitlement to recoup fees and
expenses incurred beyond the bounds of the attorney's fee
provisions in the parties' loan agreements.

Premier first argues that fees incurred to monitor Tara's
bankruptcy and to oppose Tara's administrative expense claim
against Emerald were reimbursable because Emerald's bankruptcy was
"related" to Tara's. Id. at 29-30. According to Marks, he feared
the value of Premier's recovery would be diminished or diluted if
Tara's administrative claim against Emerald succeeded. Id. at 34.
Emerald, however, correctly points out that Premier was not a party
in interest to Tara's administrative claim, and emphasizes that
Premier's actions related to this claim therefore were unnecessary

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                 1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

(Dkt. No. 58 at 21-22). The Bankruptcy Court agreed, finding
Premier's concern about its collateral too speculative, and
disallowed Premier's claim to recover attorney's fees related to
this issue (Dkt. No. 57-9 at 5).

Premier next argues that the attorney's fees it incurred
seeking to convert Emerald's bankruptcy from Chapter 11 to Chapter
7 should be reimbursed because Emerald did not adduce contrary
testimony or evidence regarding the necessity of the motion to
convert (Dkt. No. 57 at 35). Emerald, however, asserts that the
Bankruptcy Court correctly decided this issue because Premier
improperly used the motion to attempt to replace Emerald with a
Chapter 7 trustee (Dkt. No. 58 at 23).

After considering that the evidence presented during Premier's
prosecution of its motion focused on Emerald's operation of the La
Quinta Inn, rather than on Premier's collateral, the Bankruptcy
Court concluded that the motion was not properly based on
enforcement of its loan documents or collection of its claim (Dkt.
No. 57-9 at 6). Critically, the Bankruptcy Court found that had
Premier's motion to convert the case to Chapter 7 been granted,
Emerald's debt repayments to Premier likely would have been
interrupted. Id.

Premier's final argument is that its counsel should be
reimbursed for clerical work because Emerald belatedly objected to

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

these charges and the reimbursement of paralegal fees is expressly provided for under the terms of the loan documents (Dkt. No. 57 at 38-39). According to Emerald, however, clerical tasks, such as saving electronic bankruptcy filings, are part of a law firm's overhead, and this work related to the collateral matter of Tara's bankruptcy (Dkt. No. 58 at 25).

It is undisputed that the Bankruptcy Court carefully examined the substance of Premier's participation in Tara's bankruptcy case to determine whether to reimburse attorney's fees incurred to monitor that case and for associated clerical work. Ultimately, the Bankruptcy Court concluded that the fees were not reimbursable because the focus of such monitoring and clerical work did not center on enforcement of the loan documents or collection (Dkt. No. 57-9 at 6).

At bottom, Premier's argument appears to be that the Bankruptcy Court lacks discretion to question any claim for attorney's fees and expenses that Premier deemed necessary and reasonable. Such an argument, however, ignores the plain language of the attorney's fee provisions governing this issue, and appears to seek a ruling permitting essentially limitless fees.

In the Bankruptcy Court's view, Premier's aggressive pursuit of conversion and its speculative opposition to an administrative

21

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC            1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

claim were neither reasonably undertaken nor necessary to enforce or collect on its loans. This decision is not clearly erroneous and this Court declines to reverse the Bankruptcy Court's well-reasoned opinion.

**D.   The Court Cannot Review Premier's Argument that the Bankruptcy Court Erred in Considering a Late-Disclosed and Possibly Inaccurate Exhibit.**

Finally, Premier alleges that the Bankruptcy Court erroneously considered the summary of Premier's attorney's fees and costs by task submitted by Emerald. It argues that this summary did not accurately reflect the amount of attorney's fees for which Premier sought allowance (Dkt. No. 57 at 40). Further, it contends that the summary it submitted during the Bankruptcy Court's hearing on Emerald's objection to Premier's notice of amended claim is accurate and should have provided the sole basis for the Bankruptcy Court's decision on its fee claim. Id.

Unfortunately, Premier failed to designate its hearing exhibit (Exhibit 20) as part of the record on appeal. Nor did it attach this exhibit to its brief. Thus, the Court is unable to review any alleged discrepancies between Premier's hearing exhibit and Emerald's summary and declines to reverse the Bankruptcy Court's findings.

PREMIER BANK, LLC, v. EMERALD GRANDE, LLC                    1:19CV143

MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT

### V. CONCLUSION

In conclusion, for the reasons discussed, the Court **AFFIRMS** the Bankruptcy Court's March 29, 2019 Memorandum Opinion and July 17, 2019 Order disallowing $139,406.71 in attorney's fees (Dkt. Nos. 57-9, 57-10).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record, to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED: September 30, 2020.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE